ACCEPTED
01-14-00720-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/7/2015 1:04:26 PM
CHRISTOPHER PRINI
CLERK

NO. 01-14-00720-CV

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/7/2015 1:04:26 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON, TEXAS

_____

CITY OF LEAGUE CITY

*Appellant*

V.

CHRISTOBELLE LEBLANC AND STANFORD LEBLANC

*Appellees*

_____

On Appeal from the 122nd Judicial District Court of Galveston County, Texas
No. 12CV2828
Honorable John Ellisor, Presiding

_____

REPLY BRIEF OF APPELLANT

_____

Patricia L. Hayden
State Bar No.
phayden@olsonllp.com
Eric C. Farrar
State Bar No. 24036549
efarrar@olsonllp.com

OLSON & OLSON, L.L.P.
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019
Telephone:   (713) 533-3800
Facsimile:   (713) 533-3888

ATTORNEYS FOR APPELLANT
THE CITY OF LEAGUE CITY

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... ii

APPENDIX..................................................................................................... iii

INDEX OF AUTHORITIES.............................................................................iv

ISSUE PRESENTED........................................................................................vi

      The trial court erred by denying the City's plea to the jurisdiction. .............vi

REPLY ARGUMENT .......................................................................................1

I.      **The LeBlancs have limited their premises defect case to a complaint of special defect only**..................................................................................1

II.     **The City did not control the premises**......................................................2

    A.    **The design and construction of the highway and its storm sewer drain were entirely within the control of the State, not the City**....4

    B.    **The City does not have any other control over the premises to impose liability for the State's design and construction of the highway and storm sewer drain**........................................................5

III.    **The storm sewer drain at issue was not a special defect**..........................11

IV.    **Section 101.0215 of the Texas Civil Practice and Remedies Code does not waive immunity** ...............................................................................13

V.     **The City had no knowledge of the alleged defect** ....................................14

PRAYER .........................................................................................................16

CERTIFICATE OF COMPLIANCE...................................................................17

CERTIFICATE OF SERVICE ..........................................................................18

# **APPENDIX**

**TAB**

**TEX. GOV'T CODE** ...................................................................................................1

      § 311.016(2)
      § 311.026

**TEX. CIV. PRAC. & REM. CODE** ...........................................................................2

      § 101.0215

# INDEX OF AUTHORITIES

**CASES**                                                                                                                    **PAGES**

*City of Dallas v. Reed*,
    258 S.W.3d 620 (Tex. 2008) ......................................................................15

*City of Denton v. Page*,
    701 S.W.2d 831 (Tex. 1986) ........................................................................3

*City of Denton v. Paper*,
    376 S.W.3d 762 (Tex. 2012) ................................................................13, 15

*City of El Paso v. Ayoub*,
    787 S.W.2d 553 (Tex. App.—El Paso 1990, writ denied) ............................7

*City of Kemah v. Vela*,
    149 S.W.3d 199 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) .......13

*City of McAllen v. De La Garza*,
    898 S.W.2d 809 (Tex. 1995) ........................................................................3

*City of Wylie v. Taylor*,
    362 S.W.3d 855 (Tex. App.—Dallas 2012, no pet.) .................................5, 6

*Clayton W Williams, Jr., Inc. v. Olivo*,
    952 S.W.2d 523 (Tex. 1997) ....................................................................4, 9

*County of Cameron v. Brown*,
    80 S.W.3d 549 (Tex. 2002) ..........................................................4, 5, 9, 10

*Denton County v. Beynon*,
    283 S.W.3d 329 (Tex. 2009) ......................................................................11

*Dominguez v. City of Fort Worth*,
    No. 02-06-00196-CV, 2008 WL 623583
    (Tex. App.—Fort Worth March 6, 2008, pet. denied) (mem. op.)............3, 10

*Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*,
 252 S.W.3d 586 (Tex. App.—Fort Worth 2008, pet. denied),
 *cert. denied,* 555 U.S. 1138 (2009) ...............................................4

*Ethio Exp. Shuttle Service, Inc. v. City of Houston*,
 164 S.W.3d 751 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ..............13

*Frank v. Liberty Ins. Corp.*,
 255 S.W.3d 314 (Tex. App.—Austin 2008, pet. denied) ...............................8

*Harris County v. Estate of Ciccia*,
 125 S.W.3d 749 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)..........13

*McKinney v. City of Gainesville,*
 814 S.W.2d 862 (Tex. App.—Fort Worth 1991, no writ)............................14

*Modern* v. *City of Pasadena*,
 No. 01-0500337-CV, 2006 WL 560183
 (Tex. App.—Houston [1st Dist.] March 9, 2006, pet. denied) (mem. op.)11

*Siders v. State*,
 970 S.W.2d 189 (Tex. App.—Dallas 1998, pet. denied) ...............................8

*Simpson v. Harris County*,
 951 S.W.2d 251 (Tex. App.—Houston [14th Dist.] 1997, no writ)........15, 16

*State Dept. of Transp. v. Barraza*,
 157 S.W.3d 922 (Tex. App.—El Paso 2005, no pet.) .....................................8

*The Univ. of Tex.-Pan Am. v. Aguilar*,
 251 S.W.3d 511 (Tex. 2008) (per curiam) ...................................................15

*Traylor v. Oakview Healthcare Residence, Ltd.*,
 No. 03-12-00072-CV, 2013 WL 856736
 (Tex. App.—Austin Mar. 8, 2013, pet. denied) (mem. op.)...........................8

*Villarreal v. State*,
 810 S.W.2d 419 (Tex. App.—Dallas 1991, writ denied)................................8

*Wal-Mart Stores, Inc. v. Alexander*,
       868 S.W.2d 322, 324 (Tex. 1993) ..................................................................4

**STATUTES AND RULES**

**43 TEX. ADMINISTRATIVE CODE**

       § 29.5 ........................................................................................................6
       § 29.5(a)................................................................................................6, 7, 8
       § 29.5(b)..................................................................................................6, 9
       § 29.5(b)(6) .................................................................................................7

**TEX. GOV'T CODE (WESTLAW CURRENT THROUGH 2013 SESSION)**

       § 311.016(2)...............................................................................................8
       § 311.026 ....................................................................................................8

**TEX. CIV. PRAC. & REM. CODE (WESTLAW CURRENT THROUGH 2013 SESSION)**

       § 101.021 ................................................................................................3, 14
       § 101.0215 .............................................................................................13, 14

**TEX. TRANSP. CODE ANN. (WESTLAW CURRENT THROUGH 2013 SESSION)**

       § 541.302(16)..............................................................................................12

# **ISSUE PRESENTED**

The trial court erred by denying the City's plea to the jurisdiction.

## REPLY ARGUMENT

**I.     The LeBlancs have limited their premises defect case to a complaint of special defect only.**

The LeBlancs alleged that on or about December 4, 2010, Mrs. LeBlanc stepped into a storm sewer drain in the right-of-way along F.M. 518, injuring her ankle.  CR 422.  The LeBlancs filed this suit against the City of League City and Texas Department of Transportation (TxDOT), seeking damages for Mrs. LeBlanc's injuries.  CR 6.

TxDOT was dismissed due to the LeBlancs failure to comply with the notice provisions of the Texas Tort Claims Act (TTCA).  CR 20.  The City filed a plea to the jurisdiction.  The trial court gave the LeBlancs an opportunity to replead.  CR 416.

In their amended petition, the LeBlancs allege that the area in which Mrs. LeBlanc was injured was a sidewalk.  CR 422.  They allege that she stepped into an "uncovered" and "open storm drain, which constituted a special defect."  *Id.* The LeBlancs also allege that the City knew or should have known of "the defective condition ... caused by the absence of the storm drain's cover" but do not allege facts to support the City's knowledge.  *Id.*  The LeBlancs allege that the City negligently failed to: repair the drain, maintain the drain, or provide adequate lighting.  CR 424–26.

Despite the uncontroverted evidence offered by the City in support of its plea, the trial court denied the plea. CR 451.

In its plea and on appeal, out of an abundance of caution, the City argued that the LeBlancs pleaded three causes of action: premises defect, special defect, and negligence. The City then presented arguments, supported by evidence, regarding why the LeBlancs could not prevail on any pleaded claim.

However, the LeBlancs' appellee's brief makes clear that the only claim they make against the City is for a special defect. *See also* CR 123, 129–30 (LeBlancs' response to plea to the jurisdiction stating that City's plea misconstrued the LeBlancs' claim regarding storm sewer drain as an ordinary defect instead of a special defect); CR 429, 431 (asserting the drain is special defect). The LeBlancs do not address the elements of an ordinary premise defect (i.e., the duty owed to a licensee) or the elements of a negligence claim in either the responses to the City's pleas to the jurisdiction or the appellee's brief. Therefore, the only claim at issue in this lawsuit is the LeBlancs' claim that the storm sewer drain is a special defect of which the City knew or should have known. Appellees' Brief, § II.A., pp. 6–10; CR 129–30, 429.

## II.    The City did not control the premises.

While the Tort Claims Act provides a limited waiver of a governmental entity's immunity from premises liability suits, "[a]s in any other tort case, a

plaintiff relying on section 3 of the Act [now TTCA § 101.021(2)] must prove the existence and violation of a legal duty owed him by the defendant." *City of Denton v. Page*, 701 S.W.2d 831, 834 (Tex. 1986). "If a plaintiff fails to prove the existence and violation of a legal duty sufficient to impose liability under the [TTCA], sovereign immunity remains intact." *Dominguez v. City of Fort Worth*, No. 02-06-00196-CV, 2008 WL 623583, at *2 (Tex. App.—Fort Worth March 6, 2008, pet. denied) (mem. op.).

Thus, before the Court considers the law question of whether the storm sewer drain was a special defect, the Court should first consider whether the City owed any duty at all to the LeBlancs. Only if a legal duty is found would the inquiry shift to the next step: determination of whether the alleged defect was a special defect for which the City would owe an invitee standard of care. The existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *City of McAllen v. De La Garza*, 898 S.W.2d 809 (Tex. 1995).

The City did not owe a duty of care to the LeBlancs because it did not have control of the injury-causing condition on the premises where the accident occurred. One of the elements that the LeBlancs must prove in their premises liability claim against the City is that the City was a possessor of the premises where the allegedly dangerous condition was located. In the absence of such a

showing, the City owes no duty to the LeBlancs. Demonstrating that the City controlled the injury-causing condition on the premises is essential to this theory of liability.

> A defendant, who was the owner or occupier of the premises at the time of the injury, must have had control of the premises to be liable under premises liability. *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993). Therefore, a plaintiff must prove that the defendant had control over and responsibility for the premises before a duty can be imposed on the defendant. *See County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). The control that the defendant had over the premises must relate to the condition or activity that caused the injury. *See Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 527–28 (Tex. 1997).

*Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 592 (Tex. App.—Fort Worth 2008, pet. denied), *cert. denied,* 555 U.S. 1138 (2009).

> The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it.

*Brown*, 80 S.W.3d at 556.

### A.    The design and construction of the highway and its storm sewer drain were entirely within the control of the State, not the City.

The uncontroverted evidence established that the City did not control the injury-causing condition. F.M. 518 is a state highway, a portion of which runs through the city limits of League City. CR 78. F.M. 518 was designed by TxDOT in 1981, and was constructed by TxDOT some time prior to 1985. CR 83. TxDOT's design and construction plans contain the design of the roadway, the

storm drainage system, the traffic control signaling, and the street lighting for the section of F.M. 518 that contains the storm sewer drain about which Ms. LeBlanc complains. CR, 97; CR 87–89, 91. Further, this area was constructed according to TxDOT's design. CR 91. Specifically, the type and location of the grate covering the storm sewer drain was a TxDOT design decision, and the street lighting located along F.M. 518 (or, as indicated on the plans, the street lighting that was not located along F.M. 518) in the area of Ms. LeBlanc's fall was a TxDOT design decision. *Id.* Thus, any complaint about the location of the storm sewer drain or the type of grate covering the drain are complaints about conditions over which the City had no control.

**B.    The City does not have any other control over the premises to impose liability for the State's design and construction of the highway and storm sewer drain.**

As discussed above, the City had no control over the design, construction, or location of the highway or storm sewer drain. Moreover, the City does not own the right of way on which F.M. 518 is built. CR 78. The City has not placed any street lights along F.M. 518 because the City does not own the right of way on which the street lights are located.[1] CR 78–79. Furthermore, the City does not

---

[1] Thus, any complaint concerning the lack of lighting cannot support a waiver of the City's immunity. First, the State designed and constructed the highway. Second, "[a] governmental unit's sovereign immunity is not waived for failure to install lighting, which is a discretionary decision ...." *County of Cameron v. Brown*, 80 S.W.3d 549, 557 (Tex. 2002); *see also City of Wylie v. Taylor*, 362 S.W.3d 855, 862 (Tex. App.—Dallas 2012, no pet.) (explaining difference

maintain any street lights that are along F.M. 518 as it passes through the city limits. CR 79.

In an attempt to show the City's control over the alleged dangerous condition, the LeBlancs' assert that the City had control over the maintenance of the drain and negligently failed to do so. The LeBlancs contend that section 29.5 of Title 43 of the Texas Administrative Code "specifically states that the City controlled F.M. 518 where Ms. LeBlanc was injured" (LeBlancs' brief at 10), and, further, that the contract between the State and the City (CR 438) is "consistent with" section 29.5 because the contract states all "maintenance, control, supervision, and regulation" of F.M. 518 that was "not specifically described as the responsibility of the State" remained in the City. (LeBlancs' brief at 12; CR 442). The LeBlancs rely on a single phrase from section 29.5(a) taken out of context to support this argument.

Section 29.5 specifically applies to the maintenance of highways in incorporated cities. Section 29.5 specifically assigns responsibility for the maintenance of drainage facilities (such as the storm sewer drain in issue) to the State. Section 29.5(b) provides, "The department's maintenance duties on noncontrolled access highways [such as F.M. 518] ... **shall include** ... (6) **drainage**

---

between "design and maintenance, such as the distinction between designing a bridge without lighting, for which there is immunity, and failing to maintain lighting that was installed, for which there may not be immunity").

**facilities within the limits of the right of way**." 43 Tex. Admin. Code § 29.5(b)(6) (emphasis added). The Leblancs, however, disregard this express language and rely on general language found in subsection (a). Subsection (a) provides that the State may maintain highway routes when requested by a City, "provided, all items that affect ... life, health, etc. of ... dwellers within the limits of the incorporated cities, ... shall remain a function and responsibility of the incorporated cities ...." 43 Tex. Admin. Code § 29.5(a). The LeBlancs' argument fails.

First, the LeBlanc's argument assumes that a "lack" of maintenance caused Ms. LeBlanc's injury. The uncontroverted evidence disproves this theory: the drain where Ms. LeBlanc was injured was not in need of repair or maintenance. The City provided uncontroverted evidence that the drain was in the same condition as called for in TxDOT's plans and did not need any maintenance or repair. CR 42, 91. The LeBlancs did not provide any evidence to controvert the City's evidence. Further, the LeBlancs' pleadings made it clear that their complaint about the drain at issue arose from its TxDOT design; not its maintenance.[2] "Changing the design is not maintenance." *City of El Paso v.*

---

[2] The LeBlancs pleaded that the "absence of the storm drain's cover," CR 421, 422, and "no street lights in the area where Ms. LeBlanc was walking," CR 421, 423, constituted a special defect.

City of League City's Reply Brief
No. 01-14-00720-CV

7

*Ayoub*, 787 S.W.2d 553, 554 (Tex. App.—El Paso 1990, writ denied). "Maintenance involves preservation of a highway as it was originally designed and constructed." *Villarreal v. State*, 810 S.W.2d 419, 421 (Tex. App.—Dallas 1991, writ denied).[3]

Second, the LeBlancs' construction of section 29.5(a) of the Texas Administrative Code is contrary to rules pertaining to code construction. The plain language of the Administrative Code mandates that TxDOT's maintenance duties "shall include" drainage facilities within the right of way of F.M. 518, a noncontrolled access highway. *See* Tex. Gov't Code Ann. § 311.016(2) ("'Shall' imposes a duty.").[4] To support their position, the Leblancs ignore this specific mandate in favor of the more general language of subsection (a). This is incorrect. *See* Tex. Gov't Code Ann. § 311.026 (providing that specific provision controls over inconsistent general provision). Subsection (a) applies generally to any highway and, in general terms, instructs cities that they maintain responsibility for

---

[3] *See also State Dept. of Transp. v. Barraza*, 157 S.W.3d 922, 928 (Tex. App.—El Paso 2005, no pet.) ("[M]aintenance is the continuing implementation of a previous policy decision."); *Siders v. State*, 970 S.W.2d 189, 193 (Tex. App.—Dallas 1998, pet. denied) (finding a duty to maintain highway as designed).

[4] The Code Construction Act applies to agency rules adopted under a code. Tex. Gov't Code Ann. § 311.002(4); *Traylor v. Oakview Healthcare Residence, Ltd.*, No. 03-12-00072-CV, 2013 WL 856736, at *5 n.7 (Tex. App.—Austin Mar. 8, 2013, pet. denied) (mem. op.); *see also Frank v. Liberty Ins. Corp.*, 255 S.W.3d 314, 324 (Tex. App.—Austin 2008, pet. denied) (applying section 311.016(2) to Texas Administrative Code provision).

items that affect "life, health, etc." of residents, which the LeBlancs assert includes drains. In contrast, subsection (b) specifically applies to noncontrolled access highways and specifically mentions drainage facilities. Subsection (b) therefore controls. *See id.*

The plain, specific language of section 29.5(b) also defeats the LeBlanc's argument that the contract between TxDOT and the City establishes the City's control. The contract states that the City will: "Retain all functions and responsibilities for maintenance, control, supervision, and regulation which are not specifically described as the responsibility of the State." CR 442. However, the Texas Administrative Code imposes the duty upon the State to maintain drainage facilities in the right of way. In the language of the contract, the responsibility for maintenance is "specifically described as the responsibility of the State." Because the plain, express language of the applicable law and the contract place the duty of maintaining the drain on the State, not the City, the City did not control the premises at issue, and therefore, cannot be held liable. *See County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527–28 (Tex. 1997).

Finally, the LeBlancs' pleadings and their appellee's brief make clear that their complaints are actually about the design and placement of the storm sewer drain and grate, not its maintenance. For example, the LeBlancs pleaded, "While

walking along the unlit or poorly lighted F.M. 518, Ms. LeBlanc did not expect to usually encounter an uncovered, unmarked hole like the subject storm drain, which was located where a pedestrian would normally walk on a street constituting a special defect." CR 423. The decision not to install lighting was a design decision of the State. The design of the grate covering the storm sewer drain was a design decision by the State. There are no allegations of facts concerning improper maintenance or repair of the storm sewer drain. In fact, uncontroverted evidence establishes that no maintenance or repairs were needed and that the lack of any maintenance or repairs therefore did not cause a dangerous condition.

Because the storm sewer drain was designed and installed by the State, not the City, the storm sewer drain was not on the City's property, and the City had no duty to maintain the storm sewer drain, the City had no control over the drain or surrounding premises. Because the City had no control over the premises, it owed no duty to the LeBlancs. *See Brown*, 80 S.W.3d at 556. Absent a duty, the City cannot be held liable, and the TTCA does not waive immunity. *See City of Denton*, 701 S.W.2d at 834; *Dominguez*, 2008 WL 623583, at *2.

**III. The storm sewer drain at issue was not a special defect.**

The Tort Claims Act does not define "special defect" other than to liken it to "excavations or obstructions on highways, roads, or streets ...." *See Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009) *citing* Tex. Civ. Prac. & Rem. Code § 101.022(b). The Supreme Court has recently noted:

> The Legislature has specifically limited special defects to conditions 'such as excavations or obstructions on highways, roads, or streets.' Accordingly, we decline to expand the statutory definition beyond its terms.

*Id.* at 333. A "special defect" must be of the same kind or class as an excavation or obstruction that poses a threat to "ordinary users" of the roadway in the manner that an excavation or obstruction would pose. *See Beynon*, 283 S.W.3d at 332 (holding that a 17-foot floodgate arm located 3 feet off a two-lane rural roadway, which was unsecured and wrongly facing traffic, was not a special defect). *See also Modern* v. *City of Pasadena*, No. 01-0500337-CV, 2006 WL 560183, at *3 (Tex. App.—Houston [1st Dist.] March 9, 2006, pet. denied) (mem. op.) (holding that covered manhole, which slipped when stepped on, was not special defect; it was not in the roadway, but instead, was located more than five feet from the road, so that vehicular passengers and other normal users of the roadway were unlikely to encounter it).

Here, the LeBlancs' allegations involve a storm sewer drain, which is located approximately 8 feet from the roadway of F.M. 518.  CR 107–08.  It does not pose a threat to ordinary users of the roadway.  Ms. LeBlanc was not using the roadway; she was a pedestrian on the side of a roadway.  CR 66.  As a matter of law, the storm sewer drain is not a special defect.

The LeBlancs' argument is premised largely upon the assertion that the drain is located in or on a sidewalk.  The Transportation Code defines a sidewalk as "the portion of a street that is: (A) between a curb or lateral line of a roadway and the adjacent property line; and (B) intended for pedestrian use."  Tex. Transp. Code Ann. § 541.302(16).  There is no evidence that the area off the paved portion of F.M.518, beyond the curb, is "intended for pedestrian use."  It is uncontroverted that at the time of Ms. LeBlanc's fall, there was no walkway or path constructed in the area "between a curb or lateral line of a roadway and the adjacent property line."  CR 107.  Nor do the LeBlancs provide argument or analysis of subsection (B), ignoring it in favor of subsection (A).  The two subsections, however, are connected by an "and"; therefore, both conditions must be satisfied.  No evidence, no analysis, and no law support the underlying premise of the LeBlancs' position in this case, that the area in which the drain is located is a sidewalk because it is "intended for pedestrian use."  For this reason, the LeBlancs' argument that Ms.

LeBlanc was an ordinary user of the area near the drain and the citations to cases dealing with special defects on sidewalks are inapposite.

Except for their assertion that the drain occurred on a sidewalk, the LeBlancs provide no argument or analysis to support their contention that the drain was a special defect, rather than an ordinary premise defect. In particular, the LeBlancs do not respond to the contentions in the City's opening brief that the drain is not a special defect. For example, the drain does not physically impair the ability of a normal user to travel on the roadway. *See City of Denton v. Paper*, 376 S.W.3d 762, 766 (Tex. 2012). Also, the drain, because it is in the same condition as it was designed and installed by TxDOT, does not present an unusual or unexpected condition apart from the ordinary course of events. *See Harris County v. Estate of Ciccia*, 125 S.W.3d 749, 754 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

## IV. Section 101.0215 of the Texas Civil Practice and Remedies Code does not waive immunity.

The LeBlancs' argument that section 101.0215 of the Texas Civil Practices and Remedies Code waives the City's immunity for "street design" and "street maintenance" decisions (Appellees' Brief, § II. F., p. 21) has been routinely rejected by Texas courts. *See Ethio Exp. Shuttle Service, Inc. v. City of Houston*, 164 S.W.3d 751, 757 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[M]erely engaging in a governmental function does not automatically waive the City's

sovereign immunity."); *City of Kemah v. Vela*, 149 S.W.3d 199, 204 (Tex. App.— Houston [14th Dist.] 2004, pet. denied) ("However, this section [101.0215] merely provides a nonexclusive list of governmental functions for which a municipality may be held liable under the Tort Claims Act generally; it does not provide an independent basis for a waiver of governmental immunity. [citation omitted] To hold a municipality liable under section 101.0215, liability must still arise out of one of the specific areas of waiver listed under section 101.021."); *McKinney v. City of Gainesville,* 814 S.W.2d 862, 865 (Tex. App.—Fort Worth 1991, no writ) ("Nevertheless, even assuming that the City's actions fall within section 101.0215, we do not view this as waiving the City's governmental immunity.").

## V.    The City had no knowledge of the alleged defect.

The LeBlancs contend that the City did not meet its burden to disprove its actual knowledge of the purportedly unreasonably dangerous storm sewer drain. The LeBlancs assert that the City does not "identify ... the 'City employee responsible for acting'" on information relating to the condition of the drain. (LeBlancs' brief at 9).  The LeBlancs also posit that the City did not meet its burden because it did not offer proof of "a failsafe system that guarantees any knowledge of the Defendant would in fact be recorded."  (*Id.*)  Therefore, the LeBlancs contend, the City's affidavits are "conclusory and not readily controvertible." (*Id.*)

The affidavit of Kenneth Farrow shows that he is the City employee responsible for acting on repair and maintenance issues for drains and streets. CR 77 ("The Streets and Storm Water Division is responsible for all of the street maintenance and storm water drainage in the city limits of League City, with the exception of the streets, storm water drainage, and traffic signs that are on the Texas Department of Transportation's right of way."). The LeBlancs assertion that the City did not identify the employee responsible for acting is incorrect.

Concerning the LeBlancs argument that there is no evidence of a "failsafe" system to ensure the recordation of complaints or reports of an unsafe condition posed by the drain, the LeBlancs cite no authority imposing any such requirement. In determining whether a premises owner has actual knowledge, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (citing *The Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511 (Tex. 2008) (per curiam)). This evidentiary burden can be met by affidavit. *See City of Denton v. Paper*, 376 S.W.3d at 767 (reversing denial of summary judgment and dismissing case where summary judgment proof included "affidavits to demonstrate that [the city] had not received any complaints about the project or the street repair between the project's completion on March 23 and Paper's accident a week later on April 1"); *see also Simpson v. Harris County*, 951

S.W.2d 251, 254 (Tex. App.—Houston [14th Dist.] 1997, no writ) (allowing county's lack of knowledge concerning purportedly dangerous condition to be shown "through the affidavit of a county employee, an interested witness" who averred that "no requests for maintenance or repair, no reports of falls, near falls, or any injury" occurred due to condition alleged by plaintiff).  Like the City of Denton, here, the City of League City provided affidavits showing it had received no complaints or reports relating to the drain.  The affidavits also describe the process by which any reports or complaints are recorded.

## PRAYER

The City respectfully requests this Court reverse the trial court's order denying its plea to the jurisdiction and render judgment dismissing the claims against the City.  The City requests costs and all other relief to which it may be entitled.

Respectfully submitted,

**OLSON & OLSON, L.L.P.**

By: /s/ Eric C. Farrar

Patricia L. Hayden
State Bar No. 09269200
phayden@olsonllp.com
Eric C. Farrar
State Bar No. 24036549
efarrar@olsonllp.com
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019
Telephone: (713) 533-3800
Facsimile: (713) 533-3888

ATTORNEYS FOR APPELLANT,
CITY OF LEAGUE CITY

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Reply Brief of Appellant has a word count of 3,898.

/s/ Eric C. Farrar
Eric C. Farrar

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2015, a true and correct copy of the foregoing Reply Brief of Appellant was sent by:

| | | |
|---|---|---|
| Mr. Joel Flowers, III | ☐ | CMRRR # |
| FLOWERS LAW FIRM | ☐ | Facsimile No.  (866) 620-4378 |
| 1776 Yorktown Street, Suite 600 | ☐ | Hand Delivery |
| Houston, Texas 77056 | ☐ | U.S.P.S. |
| | ☐ | E-mail: |
| **Attorney for Plaintiffs,** | ☑ | jflowers@flowerslawfirm.org |
| **Christobelle LeBlanc and** | | E-Service |
| **Stanford LeBlanc** | | |

/s/ Eric C. Farrar
Eric C. Farrar

# APPENDIX 1

| Vernon's Texas Statutes and Codes Annotated |
|---|
| Government Code (Refs & Annos) |
| Title 3. Legislative Branch (Refs & Annos) |
| Subtitle B. Legislation |
| Chapter 311. Code Construction Act (Refs & Annos) |
| Subchapter B. Construction of Words and Phrases (Refs & Annos) |

V.T.C.A., Government Code § 311.016

§ 311.016. "May," "Shall," "Must," etc.

Currentness

The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute:

(1) "May" creates discretionary authority or grants permission or a power.

(2) "Shall" imposes a duty.

(3) "Must" creates or recognizes a condition precedent.

(4) "Is entitled to" creates or recognizes a right.

(5) "May not" imposes a prohibition and is synonymous with "shall not."

(6) "Is not entitled to" negates a right.

(7) "Is not required to" negates a duty or condition precedent.

**Credits**

Added by Acts 1997, 75th Leg., ch. 220, § 1, eff. May 23, 1997.

Notes of Decisions (5)

V. T. C. A., Government Code § 311.016, TX GOVT § 311.016
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Government Code (Refs & Annos)
Title 3. Legislative Branch (Refs & Annos)
Subtitle B. Legislation
Chapter 311. Code Construction Act (Refs & Annos)
Subchapter C. Construction of Statutes (Refs & Annos)

V.T.C.A., Government Code § 311.026

§ 311.026. Special or Local Provision Prevails Over General

Currentness

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

**Credits**

Acts 1985, 69th Leg., ch. 479, § 1, eff. Sept. 1, 1985.

Notes of Decisions (57)

V. T. C. A., Government Code § 311.026, TX GOVT § 311.026
Current through the end of the 2013 Third Called Session of the 83rd Legislature

# APPENDIX 2

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 5. Governmental Liability
      Chapter 101. Tort Claims (Refs & Annos)
        Subchapter B. Tort Liability of Governmental Units (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 101.0215

§ 101.0215. Liability of a Municipality

Effective: September 1, 2013

Currentness

(a) A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:

(1) police and fire protection and control;

(2) health and sanitation services;

(3) street construction and design;

(4) bridge construction and maintenance and street maintenance;

(5) cemeteries and cemetery care;

(6) garbage and solid waste removal, collection, and disposal;

(7) establishment and maintenance of jails;

(8) hospitals;

(9) sanitary and storm sewers;

(10) airports, including when used for space flight activities as defined by Section 100A.001;

(11) waterworks;

(12) repair garages;

(13) parks and zoos;

(14) museums;

(15) libraries and library maintenance;

(16) civic, convention centers, or coliseums;

(17) community, neighborhood, or senior citizen centers;

(18) operation of emergency ambulance service;

(19) dams and reservoirs;

(20) warning signals;

(21) regulation of traffic;

(22) transportation systems;

(23) recreational facilities, including but not limited to swimming pools, beaches, and marinas;

(24) vehicle and motor driven equipment maintenance;

(25) parking facilities;

(26) tax collection;

(27) firework displays;

(28) building codes and inspection;

(29) zoning, planning, and plat approval;

(30) engineering functions;

(31) maintenance of traffic signals, signs, and hazards;

(32) water and sewer service;

(33) animal control;

(34) community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code;

(35) latchkey programs conducted exclusively on a school campus under an interlocal agreement with the school district in which the school campus is located; and

(36) enforcement of land use restrictions under Subchapter E, Chapter 212, Local Government Code.[1]

(b) This chapter does not apply to the liability of a municipality for damages arising from its proprietary functions, which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality, including but not limited to:

(1) the operation and maintenance of a public utility;

(2) amusements owned and operated by the municipality; and

(3) any activity that is abnormally dangerous or ultrahazardous.

(c) The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a).

**Credits**

Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, eff. Sept. 2, 1987. Amended by Acts 1997, 75th Leg., ch. 152, § 1, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 1170, § 2, eff. June 18, 1999; Acts 2001, 77th Leg., ch. 1399, § 1, eff. June 16, 2001; Acts 2013, 83rd Leg., ch. 50 (H.B. 278), § 1, eff. Sept. 1, 2013.

Notes of Decisions (229)

Footnotes

[1]
V.T.C.A., Local Government Code § 212.131 et seq.

V. T. C. A., Civil Practice & Remedies Code § 101.0215, TX CIV PRAC & REM § 101.0215
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.